IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALA S. MOLOGNE, | ) |
|       Plaintiff, | ) Civil Action No.2:19-cv-1556-NR |
| v. | ) |
| CARECORE NATIONAL, LLC d/b/a EVICORE HEALTHCARE, | ) |
|       Defendant. | ) **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

**AND NOW COMES** Plaintiff, Kala S. Mologne, by and through her attorneys, Lawrence D. Kerr, Esq., Chelsea N. Forbes, Esq., and Tremba, Kinney, Greiner & Kerr LLC, and files the following Amended Complaint against Defendant CareCore National, LLC d/b/a eviCore healthcare.

### INTRODUCTORY STATEMENT

Plaintiff files this Amended Complaint against defendant to seek money damages based upon the defendant's willful violation of the Americans with Disabilities Act, 42 USCA § 12101 ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951 ("PHRA").

### PARTIES

1. Kala S. Mologne ("Ms. Mologne") is an adult individual who resides in Smithton, Pennsylvania.

2. CareCore National, LLC d/b/a eviCore healthcare ("eviCore") is a South Carolina corporation with an office and

principal place of business at 400 Buckwalter Place Boulevard, Bluffton, South Carolina 29910.

3. eviCore is a healthcare corporation that provides management services to healthcare plans and employer groups. It has offices in various locations. Technological advances permit it to employ staff in remote locations.

**JURISDICTION**

4. This Court has subject matter jurisdiction over Ms. Mologne's claims because they arise under the ADA, which is a federal statute.

5. This Court has supplemental jurisdiction over Ms. Mologne's state claims under the Pennsylvania Human Relations Act.

6. This Court has personal jurisdiction over eviCore because it has sufficient minimum contacts with the Commonwealth of Pennsylvania.

**VENUE**

7. Venue is proper because the facts giving rise to this suit occurred in this judicial district.

**FACTUAL BACKGROUND**

8. On June 13, 2013, eviCore hired Ms. Mologne as a clinical reviewer. Her duties entailed the authorization of radiology treatment. She worked from her home in Smithton.

9. About February 2017, Ms. Mologne was medically evaluated for an umbilical hernia.

10. On February 28, 2017, Ms. Mologne worked her last day before beginning her FMLA and short-term disability leave, which was scheduled to start on March 2, 2017.

11. On March 2, 2017, Ms. Mologne underwent surgery for Stage IIIC ovarian cancer at West Penn Hospital in Pittsburgh.

12. Throughout her eight-month recovery period, Ms. Mologne stayed in contact with her supervisor, Wendy Upson.  Ms. Upson told her that, while she did not have the authority to inform or advise her whether she would return to her former position at eviCore, she would like her to do so.

13. On October 23, 2017, Sherill King, a clinical manager with eviCore, informed Ms. Mologne of the company's new requirement which required all new employees to complete three months of training at the eviCore's headquarters in Bluffton, South Carolina.

14. Ms. Mologne was still recovering from ovarian cancer and was confined to a wheelchair.  She reminded Ms. King of her four-year tenure with eviCore. She asked to be permitted to conduct her training from home since she was not a "new" employee, and travel would not be feasible due to her compromised physical condition.

15. On October 19, 2017, Ms. Mologne contacted Peg Davies, eviCore's director of nursing. Ms. Mologne asked to speak with someone about her return to work. Ms. Davies told her

that "all new nurses must spend 90 days in the office working." Ms. Davies' email is attached as Exhibit A.

16. On November 2, 2017, Ms. King told Ms. Mologne that she had consulted with Ms. Davies, who refused to allow her to perform her training at home.

17. On or about November 27, 2017, Ms. Mologne's attorney, Lawrence Kerr, sent a letter to eviCore requesting an accommodation for her under the ADA. Mr. Kerr's letter is attached as Exhibit B.

18. On December 14, 2017, Lizz Nelson, managing counsel for eviCore, responded to Mr. Kerr's letter. Her letter is attached as Exhibit C.

19. Ms. Nelson stated that any needed ADA accommodations were exhausted when eviCore permitted Ms. Mologne to take additional leave for her recovery, and that following her leave, Ms. Mologne was unable to return to work, therefore she had "resigned" on August 15, 2017.

20. In fact, Ms. Mologne did not resign. She had been told that she would receive a call-back to discuss her return to work.

21. On December 13, 2017, Ms. Mologne filed an EEOC questionnaire alleging ADA discrimination. On December 28, 2017, Mr. Kerr mailed a letter to Ms. Nelson enclosing a

        courtesy copy of the questionnaire.  A copy of Mr. Kerr's letter is attached as Exhibit D.

22. On January 31, 2018, Ms. Nelson replied by email to Mr. Kerr's letter.  eviCore offered to "rehire" Ms. Mologne, and in doing so, waive its training program for new employees.  A copy of Ms. Nelson's letter is attached as Exhibit E.

23. On February 18, 2018, Ms. Mologne returned to work. As a result of her return, she withdrew her EEOC charge on February 22, 2018. The EEOC letter of dismissal is attached as Exhibit F.

24. Upon her return to work, Ms. Mologne requested to be placed in her former position in radiology because of her extensive knowledge and experience in that area.  She was told there were no openings.  Instead, she was moved to the chemotherapy department, which approved complex chemotherapy regimens. She had no experience in this area.

25. During Ms. Mologne's training in the chemotherapy department, the radiology department where she had previously worked frequently offered overtime to its staff. Ms. Mologne again requested to return to that department. Even though the radiology department was short-staffed as reflected by its overtime practice, Ms. Mologne's request was denied.

26. During Ms. Mologne's training in the chemotherapy department, she requested that copies of her training materials be sent to her either as hard-copies or via email so that she could print and study them more effectively. During her first few weeks of training, Ms. Mologne's supervisor, Judith Payne, emailed her a few materials, but Ms. Payne did not continue to do so through the rest of the training. Ms. Mologne was told that eviCore no longer permitted the transmission of training materials.

27. Ms. Mologne found her chemotherapy training to be very difficult. She was not given the help necessary to complete it. However, even though she did not receive training materials for her mentoring program, she did not receive negative feedback from her mentors concerning her ability to perform her new job.

28. eviCore began to subject Ms. Mologne to hyper-scrutiny and a hostile work environment. Ms. Payne frequently criticized Ms. Mologne's performance during Ms. Payne's audits of Ms. Mologne's phone calls in which Ms. Mologne approved chemotherapy. Ms. Payne told her that she needed to follow her script completely or she would fail the audit. This was never conveyed to Ms. Mologne during her training. To the contrary, her mentors had no issues with her phone calls, and in one instance they even agreed with her when she

suggested that a particular clinical pathway be based on her own personal knowledge of the situation.

29. During Ms. Mologne's mentoring program, she was expected to conduct phone calls while her mentor, as well as other mentors, instant-messaged her advice for the calls. The instant messages were often snippets of opinions from various mentors.  This procedure did not allow Ms. Mologne to acquire enough knowledge to perform her duties. She was very stressed during this process, but she managed to complete her calls with no complaints from her mentors.

30. In October 2018, Ms. Mologne's cancer recurred.  She was scheduled to undergo chemotherapy in November 2018.

31. In November 2018, eviCore continued to harass and retaliated against Ms. Mologne by writing her up for an alleged insubordination resulting from a miscommunication between her and Ms. Payne concerning the procedure for enrollment in a webinar. She was told of this infraction during an unexpected phone conference with Ms. Payne and Kelly Ross, the department manager. eviCore placed her on a designed-to-fail performance plan improvement ("PIP"), which was scheduled to run until January 10, 2019.

32. In December 2018, Ms. Payne told Ms. Mologne that she had not met her PIP goals. Ms. Payne insinuated that, since Ms. Mologne would probably not meet them in January, there was

      no point in continuing the PIP. Ms. Mologne asked Ms. Payne if she was trying to force her to resign. Ms. Payne said she was not. Ms. Mologne replied that she wanted to continue the PIP and keep her job.

33. After subjecting Ms. Mologne to hyper-scrutiny and a hostile work environment, on January 10, 2019 eviCore terminated her for pretextual reasons. Part of eviCore's motivation was due to its realization that Ms. Mologne's cancer therapy would be costly.

34. On January 16, 2019, Ms. Mologne filed an EEOC charge alleging failure to accommodate, hostile work environment, and retaliatory discharge. A copy of the charge is attached as Exhibit G.

35. On March 19, 2019, eviCore submitted an EEOC position statement. A copy is attached as Exhibit H.

36. On September 10, 2019, the EEOC issued Ms. Mologne a 90-day notice. A copy is attached as Exhibit I. The original complaint was filed within 90 days from the day Ms. Mologne received the notice.

37. More than one year has elapsed from the date of the dual-filed complaint to the Pennsylvania Human Relations Commission.

38. Ms. Mologne has properly exhausted her federal and state administrative remedies.

**COUNT I: Discrimination, Hostile Work Environment, Failure to Accommodate, Retaliation, and Wrongful Discharge in violation of the ADA**

39. The previous paragraphs are incorporated by reference.

40. Ms. Mologne brings this claim under the Americans with Disabilities Act ("ADA"), 42 USCA § 12101.

41. The ADA defines an "employer" as an industry with 15 or more employees for every working day in each of the 20 or more calendar weeks in the year in question or the preceding year. 42 USCA § 12111(5)(A).

42. eviCore employed more than 15 employees during the relevant time period.

43. The ADA defines an "employee" as an individual employed by a qualified employer. 42 USCA § 12111(4).

44. Ms. Mologne was employed by eviCore from 2013 until 2019 when she was wrongfully discharged, thus qualifying her as an employee under the ADA.

45. Ms. Mologne was "disabled" under the ADA during the relevant time period because her ovarian cancer diagnosis, condition, treatment, recovery, and physical limitations constituted a "physical or mental impairment that substantially limit[ed] one or more major life activities of such individual." 42 USCA § 12102(1)(A).

46. eviCore also perceived that Ms. Mologne was disabled.

47. The ADA defines a "major life activity" as various activities including walking and standing, both of which Ms. Mologne would be unable to do while in her wheelchair. 42 USCA § 12102(2)(A).

48. The ADA defines a "reasonable accommodation" as the adjustment of facilities to be accessible for those with disabilities and includes the requirement of training materials and reassignment to a vacant position. 42 USCA § 12111(9).

49. The ADA provides that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 USCA § 12203(a).

50. During the relevant time period, Ms. Mologne was recovering from ovarian cancer and was wheelchair bound. Her restrictions impaired her ability to travel for her job training. Her cancer recurred during her return to eviCore. This required her to undergo additional chemotherapy treatment. She is still wheelchair bound and continues her recovery.

51. Ms. Mologne made multiple, reasonable accommodation requests to be put back in her former department which

       needed assistance for its overtime program. All her requests were unreasonably denied. She received insufficient training materials which did not reasonably assist her during her training, resulting in Ms. Payne frequently criticizing her. Her requests to receive copies of the training materials were unreasonably denied.

52. eviCore held a grudge against Ms. Mologne because she had requested ADA accommodations and was compelled to employ a private attorney to achieve her return to work.  eviCore realized that her cancer treatment would be costly. eviCore retaliated against her by placing her in an unfamiliar department with training that did not adequately allow her to perform her job. She was not given a reasonable accommodation when she asked to be moved to her former department, nor was she originally given the option to complete her required training at home even though she was wheelchair bound.

53. eviCore violated the ADA when it harassed Ms. Mologne and then wrongfully discharged her on January 10, 2019.

54. eviCore acted with malice and reckless indifference.

55. eviCore's actions were intentional, wanton, and outrageous which justify an award of punitive damages concerning her claims of ADA discrimination (She does not claim punitive damages for ADA retaliation.).

56. As a result of eviCore's unlawful actions, Ms. Mologne has suffered damages in the form of past and future lost wages and benefits, loss of earnings capacity, loss of reputation, emotional damages, embarrassment, and inconvenience.

**WHEREFORE**, Plaintiff Kala S. Mologne requests judgment against the defendant in the form of reinstatement, back wages, full reinstatement of fringe benefits and seniority rights, front pay if applicable, actual and compensatory damages, punitive damages concerning her claims relating to discrimination (but not retaliation), or any combination of these remedies, costs of litigation, including reasonable attorney fees, witness fees and expenses, and interest on the judgment.

### COUNT II: Discrimination, Hostile Work Environment, Failure to Accommodate, Retaliation, and Wrongful Discharge in violation of the PHRA

57. The previous paragraphs are incorporated by reference.
58. Ms. Mologne brings this claim under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951.
59. The PHRA defines an "employer" as any person employing four or more persons within the Commonwealth. 43 P.S. § 954(b).
60. The PHRA defines a "person" as "one or more individuals, partnerships, associations, organizations, corporations,

legal representatives, trustees in bankruptcy or receivers." 43 P.S. § 954(a).

61. At all relevant time periods, eviCore, a corporation, employed more than four persons within the Commonwealth.

62. The PHRA defines an "employee" as any member of an organization who is not "(1) any individual employed in agriculture or in the domestic service of any person, (2) any individuals who, as a part of their employment, reside in the personal residence of the employer, (3) any individual employed by said individual's parents, spouse or child." 43 P.S. § 954(c).

63. During Ms. Mologne's employment with eviCore, she did not fall into any of the restricted categories, so she is considered an employee for purposes of the PHRA.

64. Under the PHRA, it is unlawful for an employer to discriminate against any employee "because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor." 43 P.S. § 955(a).

65. During the relevant time period, Ms. Mologne was recovering from ovarian cancer and was wheelchair bound. Her restrictions impaired her ability to travel for her job training. Her cancer recurred during her return to eviCore. This required her to undergo additional chemotherapy treatment. She is still wheelchair bound and continues her recovery.

66. Ms. Mologne made multiple, reasonable accommodation requests to be put back in her former department which needed assistance for its overtime program. All her requests were unreasonably denied. She received insufficient training materials which did not reasonably assist her during her training, resulting in Ms. Payne frequently criticizing her. Her requests to receive copies of the training materials were unreasonably denied.

67. eviCore held a grudge against Ms. Mologne because she had requested accommodations and was compelled to employ a private attorney to achieve her return to work. eviCore realized that her cancer treatment would be costly. eviCore retaliated against her by placing her in an unfamiliar department with training that did not adequately allow her to perform her job. She was not given a reasonable accommodation when she asked to be moved to her former department, nor was she originally given the option to

      complete her required training at home even though she was wheelchair bound.

68. eviCore violated the PHRA when it harassed Ms. Mologne and then wrongfully discharged her on January 10, 2019.

69. On February 7, 2020, Ms. Mologne's administrative remedies under the PHRA became exhausted since it was on file with the PHRC for more than one year.

70. The Pennsylvania Supreme Court and Third Circuit Court of Appeals have interpreted the substantive, disability proscriptions under PHRA as being coextensive with those of the federal ADA.

71. As a result of eviCore's unlawful actions in violation of the PHRA, Ms. Mologne has suffered damages in the form of past and future lost wages and benefits, loss of earnings capacity, loss of reputation, emotional damages, embarrassment, and inconvenience, and therefore seeks all damages available under the PHRA.

    **WHEREFORE**, Plaintiff Kala S. Mologne requests judgment against the defendant in the form of reinstatement, back wages, full reinstatement of fringe benefits and seniority rights, front pay if applicable, actual and compensatory damages, or any combination of these remedies, costs of litigation, including reasonable attorney fees, witness fees and expenses, interest on the judgment, and all legal and equitable relief under the PHRA.

**DEMAND FOR JURY TRIAL**

Plaintiff Kala S. Mologne demands a trial by Jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

                                  Respectfully submitted,

                                  TREMBA, KINNEY, GREINER & KERR, LLC

Date: <u>May 27, 2020</u>            By:  <u>/s/ Lawrence D. Kerr</u>

                                          Lawrence D. Kerr, Esq.
                                          PA I.D. #58635
                                          Chelsea N. Forbes, Esq.
                                          PA I.D. #327275
                                          Attorneys for Plaintiff
                                          302 West Otterman Street
                                          Greensburg, PA 15601

**CERTIFICATE OF SERVICE**

    I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that the document is being served electronically upon Counsel of Record through the Court's electronic transmission facilities.

Date: May 27, 2020          /s/ Lawrence D. Kerr
                                           Lawrence D. Kerr, Esq.
                                           Attorney for Plaintiff